UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 95-31037
_____


TELEPHONE ELECTRONICS CORP; TECNET INC;
METROLINK INC; LARRY D FERK,

Plaintiffs - Appellants,

versus

SOUTHERN PACIFIC TELECOMMUNICATIONS CO,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Western District of Louisiana
(94-CV-1302)
_____
September 10, 1996

Before KING, JONES, and SMITH, Circuit Judges.

EDITH H. JONES, Circuit Judge:[*]

Telephone Electronics Corp., Tecnet, Inc., Metrolink, Inc., and Larry Ferk appeal the decision of the district court dismissing their claim against Southern Pacific Telecommunications Co. for lack of personal jurisdiction and improper venue. Appellee contends that the corporate appellants, not registered as foreign corporations doing business in Louisiana, were not allowed to sue in Louisiana. Finding Appellants have made a prima facie showing

_____

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

of personal jurisdiction and are not barred by the state door-closing statute for purposes of this case, we REVERSE.

## I. BACKGROUND

The parties are involved in the telecommunications industry. Telephone Electronics Corp. (TEC), Tecnet, Metrolink, and Ferk brought suit against Southern Pacific Telecommunications Co. (SP Telecom) as successor to Digital Signal, Inc. (DSI).[1] The complaint alleged that shortly before DSI and SP Telecom merged, DSI began violating an agreement it had with TEC regarding a nationwide telephone network that was operated and maintained by TEC and DSI. The complaint further alleged that this breach was done intentionally and continued after the merger of DSI and SP Telecom.

Appellants' complaint was filed in federal district court in Louisiana and claimed SP Telecom/DSI breached three contracts. First, a "confidentiality agreement" entered into in February 1987 by Ferk, LDS NET, Inc., TEC, and DSI for the purpose of protecting Ferk as he disclosed confidential information to the other parties regarding the establishment of a telephone communications system. Second, a subsequent "Network Agreement" entered into by TEC and

---

[1] SP Telecom (now known as Qwest Communications Corporation) acquired all of the outstanding shares of stock of DSI in April 1990. Thereafter, DSI was merged into SP Telecom. Tecnet is a wholly owned subsidiary of TEC formed as a result of the Network Agreement to assist TEC in its contractual obligations with DSI. Metrolink is owned solely by Ferk and has an agreement with TEC by which it receives five percent of the gross revenue due to TEC under the Network Agreement.

DSI to establish a nationwide long distance telephone network.  And third, an agreement between DSI and TEC whereby TEC was to receive part of the revenue received from Com Systems, Inc., one of the customers of the Network Agreement.[2]

SP Telecom moved to dismiss for lack of personal jurisdiction, failure to plead subject matter jurisdiction, and for improper venue.  The motion was referred to a magistrate judge who issued a report recommending that the motion to dismiss for lack of personal jurisdiction and improper venue be granted.[3]

In concluding that the court lacked personal jurisdiction, the magistrate judge initially noted that neither TEC or Tecnet are Louisiana residents and as such any activity of SP Telecom directed at them cannot be considered as activity directed at a Louisiana resident.[4]  The magistrate judge then found that despite several meetings between the parties in Louisiana; repeated contact by phone and fax with Tecnet in Louisiana; work done in

---

[2]   Com Systems and DSI entered into an agreement in April 1987 in which DSI agreed to provide certain long distance services for Com System.  According to Appellants, DSI and TEC agreed that TEC was to receive all of the Com System account revenue for capacity west of the Mississippi River for as long as either DSI or TEC or their successors had an agreement with Com System.

[3]   In an earlier order, the district court denied SP Telecom's motion to dismiss for lack of subject matter jurisdiction.

[4]   TEC is a Mississippi corporation with its principal place of business in Jackson, Mississippi.  Tecnet is also a Mississippi corporation whose original principal place of business was moved in late 1988 from Jackson, Mississippi to Dallas, Texas.  Metrolink is a Florida corporation whose principal place of business is in Boca Raton, Florida.  Ferk is an individual domiciled in Florida. DSI was a Delaware corporation whose principal place of business was in Southfield, Michigan.  SP Telecom is a Delaware corporation whose principal place of business prior to June 1994 was in San Francisco, California, and thereafter in Denver, Colorado.

Louisiana by Tecnet relating to the Network Agreement; and mailing of payments by DSI to Tecnet in Monroe, Louisiana; that the contacts of SP Telecom/DSI with Louisiana did not constitute sufficient purposeful activity directed at Louisiana for purposes of finding specific personal jurisdiction. Further, the magistrate judge found that Appellants failed to make a prima facie showing of general personal jurisdiction and that it would be unfair for SP Telecom to defend itself in Louisiana. The recommendation of dismissal for improper venue was based on lack of jurisdiction over defendants. The magistrate judge also ruled that the corporate plaintiffs were engaged in interstate long distance business so that they did not have to qualify under Louisiana's door closing statute, La. Rev. Stat. Ann. §§ 12:314A and 12:302H (West 1994), to pursue this action.

The district court adopted the magistrate judge's report and dismissed Appellants' case without prejudice. Appellants timely appealed.

## II. DISCUSSION

### A. Personal Jurisdiction and Venue

When a nonresident defendant, such as SP Telecom, moves to dismiss for lack of personal jurisdiction, the plaintiff has the burden of establishing jurisdiction over the nonresident defendant. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When the motion to dismiss is ruled on, as here, without an evidentiary

4

hearing, the district court must accept as true uncontroverted allegations in the plaintiff's complaint and resolve all factual conflicts contained in the parties affidavits in favor of the plaintiff. *Trinty Industries v. Myers & Associates, Ltd.*, 41 F.3d 229, 230 (5th Cir.), *cert. denied*, __ U.S. __, 116 S. Ct. 52 (1995); *Wilson v. Belin*, 20 F.3d 644, 646 (5th Cir.), *cert. denied*, __ U.S. __, 115 S. Ct. 322 (1994). The plaintiff need only present a prima facie case that personal jurisdiction is proper. *Belin*, 20 F.3d at 648; *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). Review of the district court's grant of a motion to dismiss for lack of personal jurisdiction is *de novo*. *Kevlin Services, Inc. v. Lexington State Bank*, 46 F.3d 13, 14 (5th Cir. 1995).

Federal courts sitting in diversity exercise personal jurisdiction over nonresident defendants to the same extent as the forum state court. *Belin*, 20 F.3d at 646. Personal jurisdiction attaches when the nonresident defendant is "amenable to service of process under the forum state's long-arm statute and the exercise of jurisdiction comports with the due process clause of the fourteenth amendment." *ASARCO, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 786 (5th Cir. 1990). Because the Louisiana long-arm statute extends to the full reach of the constitution, whether SP Telecom is subject to personal jurisdiction depends on the parameters of federal due process. *Id*. at 786.

The exercise of personal jurisdiction over nonresident defendants is proper if two requirements are satisfied. First, the nonresident defendant must have purposefully established "minimum contacts" with the forum state. *ASARCO*, 912 F.2d at 786. And second, the maintenance of the suit must not offend "traditional notions of fair play and substantial justice." *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993)(*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)).

The "minimum contacts" prong of the due process analysis may be subdivided into two different classifications of personal jurisdiction depending on the types of contacts the nonresident defendant has with the forum state. *Belin*, 20 F.3d at 647; *Bullion*, 895 F.2d at 216. "Specific" personal jurisdiction arises when the "nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." *Belin*, 20 F.3d at 647. "General" personal jurisdiction, in contrast, permits claims to be asserted against nonresident defendants, even claims not directly related to the nonresident defendant's contacts with the forum state, "if the defendant's contacts with the forum state are both 'continuous and systematic.'" *Belin*, 20 F.3d at 647; *see Ruston Gas*, 9 F.3d at 419.

SP Telecom contends the district court properly dismissed the complaint for lack of personal jurisdiction. SP Telecom

6

asserts it did not purposefully avail itself of the privilege of doing business in Louisiana and that any contact with Louisiana resulted from the unilateral activity of Appellants.  We disagree.

As noted, specific personal jurisdiction arises when the nonresident defendant's contacts with the forum state directly relate to the cause of action.  The number of contacts the nonresident defendant has with the forum state, by itself, is not determinative; nor may jurisdiction be based on the unilateral activity of the plaintiff.  *Polythane Systems, Inc. v. Marina Ventures Int'l Ltd.*, 993 F.2d 1201, 1205 (5th Cir. 1993), *cert. denied*, 510 U.S. 1116, 114 S. Ct. 1064 (1994); *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 547 (5th Cir. 1985); *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1028 (5th Cir. 1983), *cert. denied*, 467 U.S. 1257, 104 S. Ct. 3549 (1984).  However, even a single act by a nonresident defendant by which the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws," may be sufficient to establish specific personal jurisdiction.  *Ruston*, 9 F.3d at 419 (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985)).  In determining whether the nonresident defendant has made purposeful contact with the forum state, we consider the "quality, nature, and extent of the activity in the forum [and] the foreseeability of consequences

7

within the forum from activities outside it." *Hydrokinetics*, 700 F.2d at 1028 (*quoting Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1268 (5th Cir. 1981)).

In this case, Appellants have made a prima facie showing of specific personal jurisdiction. *See Bullion*, 895 F.2d at 217 (finding the district court failed to recognize that only a prima facie case of personal jurisdiction need be shown). The facts presented by Appellants show repeated contact between the parties in Louisiana, particularly Monroe, Louisiana where Walter Frank, executive vice president of TEC and vice president of Tecnet, maintained and primarily used an office during the relevant time period. For example, the Confidentiality Agreement entered into by Ferk, DSI, TEC, and LDS Net was signed in Monroe. Discussions and negotiations concerning the establishment of the network were conducted in Monroe and New Orleans by Frank and DSI officials, and Frank signed the Network Agreement for TEC in Monroe. Once the Network Agreement was reached, DSI and Tecnet met at least five times over the next fourteen months in Monroe or New Orleans to discuss various aspects of the network. Numerous telephone calls, faxes, and letters were made between DSI in Michigan and Tecnet in Monroe concerning the network. Further, the Tecnet office in Monroe provided a variety of services relating to the continued operation of the network, including becoming involved in the

administration of the network; and some of the points of presence in the network were located in Louisiana.

Aggregating DSI's contacts with Louisiana, it is clear that these contacts cannot be characterized as "random, fortuitous, or incidental," but rather represent deliberate and purposeful contact with Louisiana with foreseeable consequences within Louisiana. *Trinity*, 41 F.3d at 231; *see also Polythane*, 993 F.2d at 1207; *Bullion*, 895 F.2d at 217. Appellants have shown sufficient minimum contacts for purposes of specific personal jurisdiction.

Separately, we do not find it unfair or unreasonable for SP Telecom to litigate in Louisiana.[5] SP Telecom is involved in providing telecommunication services nationwide. Substantial contact with Louisiana over a three year period occurred as a result of the Network Agreement. Much of the documentary evidence and many of the potential witnesses are in Monroe, Louisiana. Although Louisiana may be less convenient for SP Telecom than an alternative forum, we cannot say that litigation of this claim in Louisiana is unfair or unreasonable. *See Polythane*, 993 F.2d at 1206; *see also Compuserve, Inc. v. Patterson*, 89 F.3d 1257 6th Cir. 1996)(Internet user/provider subject to personal jurisdiction in

---

[5] In assessing the reasonableness of the exercise of jurisdiction, we consider the burden on the nonresident defendant, the interest of the forum state, the plaintiff's interest in securing relief, the judicial system's interest in efficient resolution of the controversy, and the shared interest of the several states. *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 113, 107 S. Ct. 1026, 1033 (1987).

Ohio even though only contacts with Ohio were electronic in nature).

Concomitantly, because the district court's only reason for holding venue improper was its erroneous conclusion on personal jurisdiction, the dismissal for improper venue must also be reversed.

## B. Door-Closing Statute

SP Telecom contends the district court erred in rejecting its argument that Appellants' claim is barred by Louisiana's "door-closing" statute. The Louisiana "door-closing" statute provides that "[n]o foreign corporation transacting business in this state shall be permitted to present any judicial demand before any court of this state unless it has been authorized to transact business, if required by, and as provided in, this Chapter." La. Rev. Stat. Ann. § 12:314A (West 1994). An exception to this rule exists if a foreign corporation is "[t]ransacting any business in interstate or foreign commerce." *Id*. § 12:302H. The burden of proving the application of the door-closing statute is on the party asserting its application. *Charles Pfizer & Co., Inc. v. Tyndall*, 287 So.2d 552, 553 (La. Ct. App. 1973).

SP Telecom contends that TEC and Tecnet are foreclosed from suing in Louisiana pursuant to Section 12:314A. SP Telecom notes that neither TEC nor Tecnet is qualified to do business in Louisiana and asserts that notwithstanding the interstate nature of

10

their activities, Appellants have "localized" their business presence in Monroe, Louisiana to such an extent that they are present there and are subject to the qualification requirements. We disagree.

Under the Network Agreement, DSI and TEC established a nationwide telecommunications network. The network ranged from San Diego to Boston, with all points in-between. The activities of Tecnet in Monroe were essential to, and inseparable from, the interstate nature of the nationwide telecommunications network and as such do not necessarily constitute a localization of activities or establish a distinct intrastate focus. *See Radio WHKW, Inc. v. Yarber*, 838 F.2d 1439, 1444 (5th Cir. 1988); *Diversacon Industries, Inc. v. National Bank of Commerce*, 629 F.2d 1030, 1034-35 (5th Cir. 1980); *Fred Hale Machinery, Inc. v. Laurel Hill Lumber Co., Inc.*, 483 F.2d 58, 60 (5th Cir. 1973). But caselaw clearly dictates that regardless whether the door-closing statute might prevent Appellants' access to courts in Louisiana to pursue intrastate lawsuits, the statute may not bar suits directed at activity with an "interstate character." *Fred Hale Machinery, Inc.*, 483 F.2d at 60. The lawsuit against SP Telecom has that character. *See Eli Lilly & Co. v. Sav-On Drugs, Inc.*, 366 U.S. 276, 282, 81 S. Ct. 1320 (1961).[6]

---

[6] SP Telecom also contends this court lacks subject matter jurisdiction because two nondiverse subsidiaries should be joined as indispensable parties and be treated as one with TEC for jurisdictional purposes. The presence of a

11

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is **REVERSED** and **REMANDED** for proceedings consistent herewith.

---

subsidiary may not, however, be attributed to the parent absent "proof of control by the parent over the internal business operations and affairs of the subsidiary." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1161 (5th Cir. 1983); *see Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 557-58 (5th Cir. 1985). "The degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship." *Hargrave*, 710 F.2d at 1160. SP Telecom points to no evidence of such control except for a letter indicating one of the subsidiaries may have a claim against SP Telecom arising from the Network Agreement; an exchange of letterhead designs; payment of Tecnet invoices to the payment center of one of the subsidiaries; and the assertion that the subsidiaries were primary participants in the facts relating to the complaint. This evidence is insufficient to establish the necessary control of a parent over its subsidiary to attribute the presence of the subsidiary to the parent.